IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CYCLE CITY, LTD., a Hawaii company, | ) ) ) | CV. NO. 14-00148 HG-RLP |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| HARLEY-DAVIDSON MOTOR COMPANY, INC., a Wisconsin corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

**ORDER DENYING DEFENDANT HARLEY-DAVIDSON MOTOR COMPANY INC.'S PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (ECF NO. 66)**


Plaintiff Cycle City, Ltd.'s suit arises out of Defendant Harley-Davidson's allegedly unlawful failure to renew the parties' distributorship agreement for the exclusive distribution, sale and service of Harley-Davidson motorcycles, parts, and accessories in Hawaii. Plaintiff also alleges that Defendant wrongfully failed to renew a non-exclusive trademark license agreement between the parties. Plaintiff alleges breach of the distributorship agreement and violations of the Hawaii Motor Vehicle Industry Licensing Law, Haw. Rev. Stat. § 437-1, et seq. and the Hawaii Franchise Investment Law, Haw. Rev. Stat. § 482E-1, et seq. In its motion for partial

dismissal of Plaintiff's Second Amended Complaint, Defendant Harley-Davidson argues that Plaintiff has failed to state a claim under the Hawaii Franchise Investment Law.

Defendant Harley-Davidson Motor Company's Partial Motion to Dismiss the Second Amended Complaint (ECF No. 66) is **DENIED**.

## PROCEDURAL HISTORY

On March 26, 2014, Plaintiff Cycle City, Ltd. ("Cycle City" or "Plaintiff") filed a Complaint. (ECF No. 1.)

On June 4, 2014, Defendant Harley-Davidson Motor Company, Inc. ("Harley-Davidson" or "Defendant") filed a Motion to Dismiss. (ECF No. 21.)

On June 19, 2014, Plaintiff filed an Opposition. (ECF No. 25.)

On July 2, 2014, Defendant filed a Reply. (ECF No. 27.)

On that the same day, Defendant filed a Motion to Transfer Case. (ECF No. 28.)

On July 9, 2014, the Court held a hearing on Defendant's Motion to Dismiss. (ECF No. 29.) The Court continued the hearing on Defendant's Motion to Dismiss to allow for briefing

of the Motion to Transfer Case and set both motions for hearing on September 22, 2014.

On July 25, 2014, Plaintiff filed an Opposition to Defendant's Motion to Transfer Case. (ECF No. 35.)

On August 6, 2014, Defendant filed a Reply to Plaintiff's Opposition to Defendant's Motion to Transfer Case. (ECF No. 37.)

On September 22, 2014, Defendant's Motions to Transfer Case and to Dismiss came on for hearing.

On October 17, 2014, the Court entered an Order denying Defendant's motion to transfer the case and granting in part and denying in part Defendant's motion to dismiss. (ECF No. 48.) The Court granted Defendant's motion to dismiss as it pertained to the License Agreement between the parties. The Court held that Cycle City had not sufficiently articulated a claim for violation of the Hawaii Motor Vehicle Licensing Act based on the alleged failure to renew the License Agreement. (ECF No. 48, Oct. 17, 2014 Order at p. 45.) The Court granted Plaintiff leave to amend "to attempt to state a claim for violation of the HMVILA based on termination or non-renewal of the License Agreement and/or to articulate another basis for its claim that Harley-Davidson breached the License Agreement." (Id.)

On December 2, 2014, Plaintiff filed an Amended Complaint. (ECF No. 49.) Plaintiff's Amended Complaint added a claim for violation of the Hawaii Investment Franchise Law. (ECF No. 49, Amend. Compl. ¶¶ 61-70.)

On December 16, 2014, Defendant filed a Partial Motion to Dismiss the First Amended Complaint, contending that Plaintiff had failed to state a claim under the Hawaii Franchise Investment Law. (ECF No. 50.)

On January 7, 2015, Plaintiff filed an Opposition. (ECF No. 53.)

On January 26, 2015, Defendant filed a Reply. (ECF No. 54.)

On February 17, 2015, the matter came on for hearing.

At the February 17, 2015 hearing, the parties agreed to allowing Plaintiff to file a Second Amended Complaint. (ECF No. 50). The Court denied Defendant's Partial Motion to Dismiss the First Amended Complaint (ECF No. 50) as moot and granted Plaintiff's oral request to file a Second Amended Complaint. (Id.) Plaintiff was given until March 27, 2015 to do so. (Id.)

On March 27, 2015, Plaintiff filed a Second Amended Complaint. (ECF No. 64.) Plaintiff's Second Amended Complaint includes a claim that Defendant violated the Hawaii Franchise

Investment Law by failing to renew the License Agreement. (SAC ¶¶ 61-71.)

On April 10, 2015, Defendant filed a Partial Motion to Dismiss the Second Amended Complaint, seeking to dismiss Plaintiff's claim based on the Hawaii Franchise Investment Law. (ECF No. 66.)

On April 28, 2015, Plaintiff filed an Opposition. (ECF No. 71.)

On May 13, 2015, Defendant filed a Reply. (ECF No. 72.)

Pursuant to Local Rule 7.2(d) the Court elected to decide the matter without a hearing.

## **BACKGROUND**

This case involves a dispute between Harley-Davidson, a manufacturer of motorcycles and related products and services, and Cycle City, Harley-Davidson's exclusive Hawaii distributor for the past 48 years.  (Second Amended Compl., ECF No. 49, ("SAC") ¶¶ 2, 6.)  Since 1966, Plaintiff "Cycle City has served as the exclusive distributor for the distribution, sale and service of Harley-Davidson motorcycles, OEM parts, accessories, MotorClothes® and Officially Licensed Products through Harley-Davidson dealers and licensees appointed by

distributor . . . ." (SAC ¶ 6.)  During this time, Cycle City
contends that it has built an extensive customer base and
dealer network.  (SAC ¶¶ 7, 8.)  Cycle City alleges that it
has "exponentially increased the brand awareness, goodwill,
popularity and the reputation of the Harley-Davidson brand
throughout Hawaii" and that "[a]s a direct result of the
efforts of Cycle City, retail sales of Harley-Davidson
motorcycles and products have surged and represent a
significant amount of all motorcycle sales made in this
state."  (SAC ¶ 7.)

Cycle City has served as the exclusive distributor under
distributorship agreements. (SAC ¶ 8.)  Cycle City contends
these distributorship agreements were renewed automatically,
with the most recent Distributorship Agreement being entered
into on November 24, 2008. (SAC ¶ 8 and at Exh. A,
hereinafter, "Distributorship Agreement").)  In addition to
its role as exclusive distributor, Cycle City owns and
operates Harley-Davidson dealerships on Oahu and Maui. (SAC ¶
9.)  The two
other Harley-Davidson dealerships located in the State of
Hawaii are owned by Aloha Auto Group, Inc., an independent
third-party, and are located on the Islands of Kauai (Kauai

Harley-Davidson) and Hawaii (Big Island Harley-Davidson).
(Id.)

Cycle City also had a separate License Agreement with
Harley-Davidson to manufacture certain goods bearing Harley-
Davidson trademarks. (SAC ¶ 10 and at Exh. B ("Nonexclusive
Trademark License Agreement Between Harley-Davidson Motor
Company, Inc. And Cycle City, Ltd."), hereinafter "License
Agreement".)  Under the License Agreement, Cycle City sold
products bearing Harley-Davidson's trademarks to dealers in
its dealer network and to independent third party retailers.
(SAC ¶ 10.)  According to Cycle City, its ability to
manufacture and sell products under the License Agreement is a
significant form of marketing, advertising, and promotion of
the brand as well as a significant source of income.  (Id.)

Cycle City alleges that, through the course of its
relationship with Harley-Davidson, it "has invested millions
of dollars and countless hours towards the development of the
Harley-Davidson brand and goodwill, the development of the
Harley-Davidson dealer network, and the operation of
Plaintiff's business in Hawaii." (SAC ¶ 14.)  According to
Plaintiff, Harley-Davidson now seeks to significantly alter
the parties' relationship by not renewing the Distributorship
Agreement or the License Agreement.  (SAC ¶¶ 16-19.)

According to Harley-Davidson, on July 13, 2013, the Distributorship Agreement expired and was not renewed. (SAC ¶ 25.) Harley-Davidson also claims it did not renew the License Agreement and it expired by its terms on December 31, 2013. (SAC ¶ 26; License Agreement, at Amendment No. 1, § 2(b).)

The SAC alleges that Harley-Davidson's actions in not renewing the Distributorship and License Agreements are an attempt to end Cycle City's role as the distributor in Hawaii and to limit Cycle City's role to that of a dealer. (SAC ¶ 17.) Cycle City contends that, in doing so, Harley-Davidson aims to recapture for itself the significant benefits now being realized by Cycle City as the Harley-Davidson Hawaii distributor for over the past 48 years. (SAC ¶ 15.)

According to the SAC, for several months prior to the Distribution Agreement's July 31, 2013 expiration, Cycle City and Harley-Davidson engaged in negotiations regarding their ongoing relationship which resulted in an impasse. (SAC ¶¶ 17-25.) Cycle City maintains that despite termination of the parties' written agreements, Harley-Davidson has continued to sell products to Cycle City, but at "significantly and unreasonably" increased prices. (SAC ¶ 27.)

Cycle City, Ltd.'s SAC contains four counts:

Count I:  violation of Hawaii Motor Vehicle Industry Licensing Act, Haw. Rev. Stat. § 437-1, <u>et</u> <u>seq.</u> ("HMVILA") for failure to renew the Distributorship Agreement;

Count II:  declaratory relief based on Harley-Davidson's alleged failure to renew the most recent Distributorship Agreement;

Count III:  breach of the Distributorship Agreement; and

Count IV:  violation of the Hawaii Franchise Investment Law, Haw. Rev. Stat. § 482E-1, <u>et</u> <u>seq.</u>, for imposing an unreasonable and arbitrary standard of conduct and for failing to renew the License Agreement.

## **STANDARD OF REVIEW**

### **Motion to Dismiss Based on Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) allows dismissal where a complaint fails "to state a claim upon which relief can be granted." <u>Salmon Spawning & Recovery Alliance v. Gutierrez</u>, 545 F.3d 1220, 1225 (9th Cir. 2008).  The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. Rule 8(a)(2). Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it

demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007)). A pleading must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." The factual allegations in a pleading "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

A complaint survives a motion to dismiss when it contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content of the complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard does not require probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). A complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all allegations of material fact to be true and draw all reasonable inferences in favor of the non-moving party. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The Court need not accept as true, however, allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010)(documents attached to the complaint and matters of public record may be considered on a motion to dismiss).

## ANALYSIS

**I.    Defendant's Partial Motion to Dismiss Plaintiff's Claim for Violation of the Hawaii Franchise Investment Law (Count IV)**

Defendant Harley-Davidson's partial motion for dismissal pertains only to Count IV - Plaintiff's claim for violation of the Hawaii Franchise Investment Law, Haw. Rev. Stat. § 482E-1, et seq. ("HFIL"). (SAC ¶¶ 61-71.)  Defendant moves to dismiss Plaintiff's HFIL claim, arguing that because Cycle City is not a "franchise", it is not governed by the HFIL.

In its HFIL claim, Cycle City alleges that the License Agreement constitutes a "franchise" as defined by Section 482E-2 of the Hawaii Franchise Investment Law. (SAC ¶ 62.) Under the HFIL, the definition of "franchise" requires payment of a "franchise fee." HFIL, Haw. Rev. Stat. § 482E-2. Cycle City alleges that the provisions of the License Agreement pertaining to the payment of royalties satisfies the definition of "franchise fee." (SAC ¶¶ 63-65.)

According to the SAC, Harley-Davidson violated the HFIL by wrongfully refusing to renew the License Agreement and, instead, demanding that "Cycle City consent to the ultimate termination of the distribution model under which the parties have operated for over 48 years." (SAC ¶ 70.)

Cycle City relies on three provisions of the HFIL. Cycle City alleges that Harley-Davidson has violated the HFIL by: (1) not dealing in good faith in violation of Haw. Rev. Stat. § 438E-6(1); (2) imposing unreasonable and arbitrary standards of conduct in violation of § 483E-6(2)(G); and (3) failing to renew the License Agreement in violation of Haw. Rev. Stat. § 483E-6(2)(H). (SAC ¶¶ 68-69.)

Harley-Davidson moves to dismiss on the grounds that the SAC does not allege sufficient facts to state a claim that the License Agreement constitutes a "franchise" as defined by Haw.

Rev. Stat. § 482E-2. (ECF No. 68, Motion at 4.)  In particular, Harley-Davidson contends that Cycle City has not adequately alleged payment of a "franchise fee".  (Id.) Defendant contends that: (1) the provisions in the License Agreement pertaining to the payment of royalties do not constitute the payment of franchise fees; and (2) the License Agreement is not the type of arrangement intended to be regulated as a franchise under Hawaii law.  (Id.)

**A.    The Hawaii Franchise Investment Law**

**1.    Purpose**

The legislature enacted the Hawaii Franchise Investment Law, Haw. Rev. Stat. § 482E-1, et seq. ("HFIL") to regulate the sale of franchises in the State and to protect franchisees.  Haw. Rev. Stat. § 482E-1.  By enacting the HFIL, the legislature intended to:

> (1) Provide each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered;
>
> (2) Prohibit the sale of franchises that would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled; and
>
> (3) Protect the franchisor or subfranchisor by providing a better understanding of the relationship between the franchisor or subfranchisor and the franchisee with regard to their business relationship.

Haw. Rev. Stat. § 482E-1(b).

## 2. Definitions

The HFIL defines the term "franchise." As defined by the HFIL, the term "franchise"

> means an oral or written contract or agreement, either expressed or implied, in which a person grants to another person, a license to use a trade name, service mark, trademark, logotype or related characteristic in which there is a community interest in the business of offering, selling, or distributing goods or services at wholesale or retail, leasing, or otherwise, and in which the franchisee is required to pay, directly or indirectly, a franchise fee.

Haw. Rev. Stat. § 482E-2.

Under the definition of "franchise" the franchisee must pay a "franchise fee".

The term "franchise fee"

> means **any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement**, including, but not limited to, the payment either in lump sum or by installments of an initial capital investment fee, any fee or charge based upon the amount of goods or products purchased by the franchisee from the franchisor or subfranchisor, any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees, any payment for goods or services, or any training fees or training school fees or charges.

Haw. Rev. Stat. § 482E-2 (emphasis added).

Excluded from the definition of "franchise fee" are:

(1) the purchase or agreement to purchase goods at a bona fide wholesale price;

(2) the purchase or agreement to purchase goods by consignment; if, and only if the proceeds remitted by the franchisee from any such sale reflect only the bona fide wholesale price of such goods;

(3) a bona fide loan to the franchisee from the franchisor;

(4) the purchase or agreement to purchase goods at a bona fide retail price subject to a bona fide commission or compensation plan that in substance reflects only a bona fide wholesale transaction;

(5) the purchase or agreement to purchase supplies or fixtures necessary to enter into the business or to continue the business under the franchise agreement at their fair market value;

(6) the purchase or lease or agreement to purchase or lease real property necessary to enter into the business or to continue the business under the franchise agreement at the fair market value.

Haw. Rev. Stat. § 482E-2.

The term "'franchisor' means a person who grants a franchise to another person." Id. The term "'franchisee' means a person to whom a franchise is offered or granted." Id.

### 3. Haw. Rev. Stat. § 482E-6 (Relationship Between Franchisor and Franchisee)

Cycle City alleges violation of the Hawaii Franchise Investment Law ("HFIL"), Section 482E-6 of the Hawaii Revised Statutes, in particular Sections 482E-6(1) and 482E-6(2)(G)

and (H).  Section 482E-6 sets forth specific rights and prohibitions to govern the relation between the franchisor and its franchisees.  Section 482E-6(1) provides that the parties shall deal with each other in good faith.  Haw. Rev. Stat. § 482E-6(1).  Section 482E-6(2) declares certain actions to be unfair or deceptive acts or practices or unfair methods of competition.  Under Section 482E-2(G) it shall be an unfair or deceptive act or practice or an unfair method of competition for a franchisor or subfranchisor to "[i]mpose on a franchisee by contract, rule, or regulation, whether written or oral, any unreasonable and arbitrary standard of conduct."  Haw. Rev. Stat. § 482E-2(G).  Under Section 482E-2(H) it shall be an unfair or deceptive act or practice or an unfair method of competition for a franchisor or subfranchisor to "[t]erminate or refuse to renew a franchise except for good cause, or in accordance with the current terms and standards established by the franchisor then equally applicable to all franchisees, unless and to the extent that the franchisor satisfies the burden of proving that any classification of or discrimination between franchisees is reasonable, is based on proper and justifiable distinctions considering the purposes of this chapter, and is not arbitrary."  Haw. Rev. Stat. § 482E-2(H).

## B. Plaintiff Has Sufficiently Alleged that the License Agreement is a Franchise

In order for the License Agreement to qualify as a franchise, it must satisfy three criteria:

(1) It must be an agreement expressly or implicitly granting Cycle City a license to use Harley-Davidson's trade name, service mark, trademark, or logotype;

(2) There must be a community interest between Cycle City and Harley-Davidson; and

(3) Cycle City must be required to pay, directly or indirectly, a franchise fee to Harley-Davidson.

Haw. Rev. Stat. § 482E-2.

Harley-Davidson does not dispute that the License Agreement satisfies the first criteria. Harley-Davidson argues that Cycle City has not sufficiently stated a claim under the second and third criteria. Harley-Davidson argues that Cycle City has not sufficiently alleged payment of a franchise fee. Harley-Davidson also argues that the License Agreement is not the type of agreement that was intended to be regulated as a franchise. The latter argument goes to whether Cycle City has made sufficient factual allegations to satisfy the "community interest" prong of the franchise definition.

The Court will first address the "franchisee fee"

requirement followed by the "community interest" requirement.


### 1. Cycle City Has Alleged That It Was Required to Pay a Franchise Fee

In order to establish the third element of the

"franchise" definition – that Cycle City be required to pay a

franchise fee -  Cycle City points to the royalty payment

provisions in Sections 3.1 and 3.2 of the License Agreement.

(SAC ¶¶ 64-65.)

Section 3.1 of the License Agreement provides:

> During the Term and any applicable sell-off
> period, Licensee shall pay to Licensor royalties
> in the following amounts: Category I; twelve
> percent (12%); Category II; fifteen percent
> (15%); Category III: ten percent (10%); and
> Category IV: ten percent (10% of Net Sales of
> Licenses Articles ("Royalties"). As prescribed
> in section 3.3. For purposes of computing Gross
> Sales, net Sales and Royalties due, a sale shall
> be deemed to take place at the point at which
> Licenses Articles are sold by Licensee or any
> authorized Affiliate of Licensee to:  i)
> wholesale or retail outlets; (ii) sales people
> or sales representatives; (ii) employees; (iv)
> ultimate consumers; or (v) any other person or
> entity to whom sales of Licensed Articles are
> authorized under this Agreement.

(ECF No. 64, SAC at Exh. B, ¶ 3.1.)

Section 3.2 of the License Agreement obligates Cycle City

to pay minimum royalties of $30,000.000 per annum for the

three-year (3) duration of the Agreement regardless of the volume of sales achieved by Cycle City. (Id. ¶ 3.2.)

The payment of royalties falls within the Hawaii Franchise Investment Law's ("HFIL") definition of "franchise fee". Under the HFIL, a "franchise fee" means, in relevant part, "any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to . . . any fee or charge based upon the amount of goods or products purchased by the franchisee from the franchisor or subfranchisor, **any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees**, . . ." Haw. Rev. Stat. § 482E-2 (emphasis added); see Manhattan Bank, N.A. New York, N.Y. v. Clusiau Sales & Rental, Inc., 308 N.W. 2d 490, 492 (Minn. 1981) (muffler-company which agreed to pay defendant 8% of its gross sales as royalties and advertising fees was a franchise within the meaning of the Minnesota Franchise Act). Section 3.1 of the License Agreement contemplates the payment of a percentage of Cycle City's net sales to Harley-Davidson.

In arguing that the payment of royalties does not constitute a franchise fee, Harley-Davidson relies on the

19

exclusions under the "franchise fee" definition.  (ECF No. 68,
Motion at 11.) Harley-Davidson points to the part of the
"franchise fee" definition which excludes from the definition
the purchase or agreement to purchase goods at a bona fide
wholesale price and the purchase or agreement to purchase
goods at a bona fide retail price subject to a bona fide
commission or compensation plan that in substance reflects
only a bona fide wholesale transaction.  Haw. Rev. Stat. §
482E-2.  These exclusions do not apply because the License
Agreement is not an agreement to purchase goods.  Rather,
under the License Agreement, Harley-Davidson granted Cycle
City the non-exclusive right to use Harley-Davidson's licensed
marks. (ECF No. 64, SAC at Exh. B., License Agreement at 3,
Section ¶ 2.1.)  The parties' Distributorship Agreement
pertains to the purchase of goods, but the Distributorship
Agreement is a separate agreement with its own provisions
pertaining to the ownership and use of trademarks.  (ECF No.
64, SAC at Exh. A, Distributorship Agreement.)

Further, any factual dispute as to whether Cycle City
paid a direct or indirect franchise fee to Harley-Davidson, is
a question of fact not appropriate for resolution in the
context of a motion to dismss.  See To-Am Equip. Co. v.

Mitsubishi Caterpillar Forklift Am., 152 F.3d 658, 663 (7th Cir. 1998) (stressing "the highly fact-specific nature of the question whether alleged business expenses are franchise fees"); JJCO, Inc. v. Isuzu Motors America, Inc., 2009 WL 1444103, at *6 (D. Haw. May 22, 2009) (whether expenses paid constituted a franchise fee was a question of fact that could not be determined on summary judgment).

### 2. Cycle City Has Alleged a Community Interest Between It and Harley-Davidson

The second element of the "franchise" definition requires that a community interest exist between the manufacturer and the dealer or distributor. The HFIL defines "community interest" as "a continuing financial interest between the franchisor and franchisee in the operation of the franchise business." Haw. Rev. Stat. § 482E-2.

In Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc., 549 F.3d 1079, 1093 (7th Cir. 2008), the Seventh Circuit Court of Appeals considered a non-exhaustive list of factors in determining whether a community of interest existed between a dealer and a grantor such that the plaintiff was protected under the Washington Fair Dealership Law. Relevant factors included:

> (1) the duration of the business relationship; (2) the nature and extent of the parties' contractual arrangement; (3) the proportion of

time and revenue the alleged dealer devotes to the alleged grantor's products or services; (4) the percentage of gross profits that the alleged dealer derives from the alleged grantor's products or services; (5) the nature and extent of the alleged grantor's territorial grant to the alleged dealer; (6) the nature and extent of the alleged dealer's uses of the alleged grantor's proprietary marks; (7) the nature and extent of the alleged dealer's investment in facilities, inventory, and goodwill in furtherance of the alleged dealership; (8) the personnel devoted by the alleged dealer to the alleged dealership; (9) the amount spent by the alleged dealer on advertising or promotions for the alleged grantor's products and services; and (10) the nature and extent of any supplementary services provided by the alleged dealer to consumers of the alleged grantor's products and services.

Id. at 1093 (citing <u>Ziegler Co. v. Rexnord, Inc. (Ziegler I)</u>, 139  2d 593, 407 N.W.2d 873, 879-80 (1987)).[1]

Cycle City argues that several of these factors indicate that it has a franchise relationship with Harley-Davidson. (ECF No. 71, Opposition at 11-12.)  Among these are Cycle City's license to use Harley-Davidson's trademarks and Cycle City's payment of royalty fees to Harley-Davidson for the sale

---

[1] The <u>Girl Scouts of Manitou Council Inc.</u> Court applied the Wisconsin Fair Dealership Law, which contains a definition of community interest similar to that under the Hawaii Franchise Investment Law.  <u>See</u> Wis. Stat. § 135.02(1) (defining "community of interest" as "a continuing financial interest between the grantor and grantee in either the operation of the dealership business or the marketing of such goods or services").

of licensed products.  Cycle City also points out that the
License Agreement gave Harley-Davidson the right to approve
all licensed products, packaging and promotional materials.
(SAC, Exh. B, License Agreement, ¶¶ 4.1-4.3.)  Cycle City was
required to obtain Harley-Davidson's approval before it could
produce any of the licensed products.  (Id. ¶¶ 4.2-4.3.)  The
License Agreement also required Cycle City to limit its sale
of the licensed products to the Hawaii market and to use its
best efforts to advertise, promote, sell and distribute the
licensed products.  (Id. ¶¶ 6.1-6.2.)  Under the
Distributorship Agreement, Cycle City was been obligated to
purchase all new motorcycles exclusively from Harley-Davidson.
(SAC, Exh. A, Distributorship Agreement, ¶ 5.6.)  Based on the
parties' relationship and the provisions of the License
Agreement, Cycle City concludes that Harley-Davidson exercised
substantial control over its sale and distribution of the
licensed products and that Cycle City made substantial
investments in the manufacture, advertising, sale, and
distribution of such products.  (ECF No. 71, Opposition at
12.)

Cycle City further argues that its substantial financial
investment in maintaining Harley-Davidson inventory and
identifying itself as an authorized dealer and distributor of

Harley-Davidson products shows that it was a Harley-Davidson franchisee. (ECF No. 71, Opposition at 12); see Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc., 63 F. 3d 262, 269-74 (3d Cir. 1995) (evidence concerning aspects of wholesale distributor's lengthy relationship with home appliance manufacturer was sufficient to establish existence of "license" to use manufacturer's trade name, trademark, service mark or related characteristics, as required to establish existence of franchise under New Jersey Franchise Practices Act; distributor's showroom displayed manufacturer's sign, its servicemen wore manufacturer's uniforms, and distributor was exclusive distributor in four-state territory for 30 years).

There is no precise line between when a company is simply a distributor of a manufacturer's trademarked goods and when the company is a franchise. The mere licensing of a trademarked good, without more, does not give rise to a franchise relationship. How much more is required is a matter of degree and, in many cases such as this one, a question for the finder of fact.

The facts alleged indicate that there has been a continuing financial interest between Cycle City and Harley-Davidson in the operation of Cycle City's business. Cycle

24

City has sufficiently alleged a community interest between it and Harley-Davidson to satisfy the second element of the definition of "franchise" under the HFIL.

## CONCLUSION

For the foregoing reasons, Plaintiff Cycle City has stated a claim under the Hawaii Franchise Investment Law, Haw. Rev. Stat. § 482E-1, <u>et</u> <u>seq</u>. (Count IV of the Second Amended Complaint), based on the License Agreement.

Defendant Harley-Davidson Motor Company's Partial Motion to Dismiss the Second Amended Complaint (ECF No. 66) is **DENIED**.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 26 , 2015.



/s/ Helen Gillmor

Helen Gillmor
United States District Judge

CYCLE CITY LTD. v. HARLEY-DAVIDSON MOTOR COMPANY, INC., Civ. No. 14-00148 HG-RLP; **ORDER DENYING DEFENDANT HARLEY-DAVIDSON MOTOR COMPANY INC.'S PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (ECF NO. 66)**

25